[Civ. No. 48662. First Dist., Div. Four. July 28, 1982.]

BURLINGAME CITIZENS FOR NEIGHBORHOOD SCHOOLS, Plaintiff and Appellant, v.
BOARD OF TRUSTEES OF THE BURLINGAME ELEMENTARY SCHOOL DISTRICT et al., Defendants and Respondents.

**COUNSEL**

James M. Dombroski and Stitt & Dombroski for Plaintiff and Appellant.

Keith C. Sorenson, District Attorney, Elizabeth A. Coyne and Diane E. Finkelstein, Deputy District Attorneys, for Defendants and Respondents.

**OPINION**

POCHÉ, J.—In this action for declaratory and injunctive relief, damages, and mandate, Burlingame Citizens for Neighborhood Schools (appellant), an unincorporated association, challenged the decision of respondents, Burlingame Elementary School District (district), to close certain schools. The appeal is from the judgment of dismissal entered on an order granting the district's motion for summary judgment.

The gist of appellant's complaint, which relies entirely[1] on Education Code section 39384,[2] is that: (1) before a decision is made to close a school, section 39384 must be complied with; and (2) its requirement of "community involvement" was not met.

The problem with this challenge to the power of the district to *close* schools unless and until there has been compliance with section

---

[1]Appellant explains its own pleading: "The first cause of action is for declaratory relief requesting a judicial declaration of [appellant's] rights under Section 39384 relating to closure of schools. The second cause of action is for injunctive relief to enjoin [respondents] from closing schools until [respondents] have complied with Section 39384. The third cause of action is for mandamus to compel [respondents] to perform their duties required by Section 39384."

[2]Unless otherwise indicated, all further statutory references are to the reorganized Education Code.

Section 39384, which is part of article 4 entitled "Sale or Lease of Real Property" provided at all times relevant to proceedings below: "(a) It is the intent of the Legislature that school districts be authorized under specified procedures to make vacant classrooms in operating schools available for rent or lease to other school districts, educational agencies, governmental units, nonprofit organizations, community agencies, professional agencies, commercial and noncommercial firms, corporations, partnerships, businesses and individuals. This will place students in close relationship to the world of work, thus facilitating career education opportunities. [¶] (b) It is the intent of the Legislature that priority in leasing or renting vacant classroom space be given to educational agencies, particularly those conducting special education programs. [¶] It is the intent of the Legislature that such procedures provide for community involvement by attendance area and at the district level. This community involvement should facilitate making the best possible judgments about the use of excess school facilities in each individual situation. [¶] It is the intent of the Legislature to have the community involved before decisions are made about school closure or the use of surplus space, thus avoiding community conflict and assuring building use that is compatible with the community's needs and desires. [¶] (c) The governing board of any school district may, and the governing board of each school district, prior to the sale, lease or rental of any excess real property, except rentals not exceeding 30 days, shall, appoint a district advisory committee to advise the governing board in the development of districtwide policies and procedures governing the use or disposition of school buildings or space in school buildings which is not needed for school purposes. [¶] (d) A district advisory committee shall consist of not less than 7 nor more than 11 members, and shall be representative of the following: [¶] 1. The ethnic, age group and socioeconomic composition of the district. [¶] 2. The business community, such as store owners, managers or supervisors. [¶] 3. Landowners and renters. [¶] 4. Teachers and administrators. [¶] 5. Parents of students. [¶] 6. Persons with expertise in environmental impact, legal contracts, building codes, and land use planning. [¶] (e) The district advisory committee shall: [¶] 1. Review the projected school enrollment and other data as provided by the district to determine the amount of surplus space. [¶] 2. Establish a priority list of use of surplus space that will be acceptable to the community. [¶] 3. Cause to have circulated throughout the attendance area a priority list of surplus space and provide for hearings of community input to the committee on acceptable uses of space. [¶] 4. Make a final determination of limits of tolerance for use of space. [¶] 5. Forward to the district governing board a report recommending uses of surplus space. [¶] (f) An existing district advisory committee having the representation specified in subdivision (c), may be designated as the district advisory committee for the purposes of this section."

39384 is that the statute does not purport to regulate or to set preconditions on decisions to *close* schools. Instead, its entire thrust is a concern with involvement of the district-wide community in decisions relating to the *use* or *disposition* of excess school property. The only portion of section 39384 which refers in any manner to "school closure" is subdivision (b): "It is the intent of the Legislature to have the community involved before decisions are made about school closure." That precatory language is in no way implemented in the remainder of the statute which is specific in its directions. Before a school district *sells, leases or rents* for more than thirty days any excess real property section 39384 requires the formation of a committee to advise the governing board in "the development of districtwide policies and procedures governing the *use or disposition* of school buildings or space in school buildings which is not needed for school purposes." (§ 39384, subd. (c); italics added.) After public hearings, that advisory committee is required to make its "final determination of limits of tolerance for *use* of space" and to forward to the district governing board a "report recommending *uses* of surplus space." (§ 39384, subds. (e) 4 & 5; italics added.) Thus, the statutory directions concern acts to be taken before sale or lease of excess school property. Because the instant suit—on its face—relates to neither, summary judgment was proper.

The judgment is affirmed.

Caldecott, P. J., and Rattigan, J., concurred.

A petition for a rehearing was denied August 25, 1982, and appellant's petition for a hearing by the Supreme Court was denied October 13, 1982. Bird, C. J., was of the opinion that the petition should be granted.